TROY LAW, PLLC
John Troy (JT 0481)
41-25 Kissena Boulevard, Suite 119
Flushing, NY 11355
Tel: (718) 762-1324
Fax: (718) 762-1342
*Attorney for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------------x
CHUI-FAN KWAN
     a/k/a Connie Kwan,
*on behalf of herself and others similarly situated*,
                        Plaintiff,

                v.

SAHARA DREAMS CO. II INC.
     f/k/a Sahara Dreams Co. Inc.
     f/k/a Sahara Dreams Limited
     d/b/a Dream Hotel Downtown,
SAHARA DREAMS LLC
     f/k/a Sahara Dreams LLC
     d/b/a Dream Hotel Downtown,
SAHARA HAMPSHIRE HOTEL MANAGEMENT
     LLC
     d/b/a Dream Hotel Midtown,
SAHARA HAMPSHIRE HOTEL MANAGEMENT
     CO. II INC.
     f/k/a Sahara Hampshire Hotel Management Co.
     Inc.
     f/k/a Sahara Hampshire Hospitality
     Management Limited
     d/b/a Dream Hotel Midtown,
HAMPSHIRE HOTELS & RESORTS, LLC
     f/k/a Hampshire Hotels & Resorts Limited
     Liability Company
     d/b/a Hampshire Brand, Hotel & Asset
     Management,
DREAM HOTEL GROUP, LLC
     f/k/a Hampshire Hotels Management LLC,
NORTHQUAY PROPERTIES LLC
     d/b/a Northquay Properties, and
NORTHQUAY PROPERTIES MANAGEMENT
     CORP.
     d/b/a Northquay Properties,

**Case No. 17-cv-4058**

**29 U.S.C. § 216(b) COLLECTIVE
ACTION AND FED. R. CIV. P.
23 CLASS ACTION**

**SECOND AMENDED
COMPLAINT**

Defendants.

----------------------------------------------------------------------x

Plaintiff CHUI-FAN KWAN a/k/a Connie Kwan, (hereinafter referred to as "Plaintiff"), on behalf of herself and others similarly situated, by and through her attorneys, Troy Law, PLLC, hereby bring this complaint against Defendants SAHARA DREAMS CO. II INC. f/k/a Sahara Dreams Co. Inc. f/k/a Sahara Dreams Limited d/b/a Dream Hotel Downtown, SAHARA DREAMS LLC f/k/a Sahara Dreams LLC d/b/a Dream Hotel Downtown, SAHARA HAMPSHIRE HOTEL MANAGEMENT LLC d/b/a Dream Hotel Midtown, SAHARA HAMPSHIRE HOTEL MANAGEMENT CO. II INC. f/k/a Sahara Hampshire Hotel Management Co. Inc. f/k/a Sahara Hampshire Hospitality Management Limited d/b/a Dream Hotel Midtown, HAMPSHIRE HOTELS & RESORTS, LLC f/k/a Hampshire Hotels & Resorts Limited Liability Company d/b/a Hampshire Brand, Hotel & Asset Management, DREAM HOTEL GROUP, LLC f/k/a Hampshire Hotels Management LLC, NORTHQUAY PROPERTIES LLC d/b/a Northquay Properties, and NORTHQUAY PROPERTIES MANAGEMENT CORP. d/b/a Northquay Properties, (hereinafter referred to as "Defendants").

## INTRODUCTION

1. This action is brought by Plaintiff, on behalf of herself as well as other similarly situated employees against Defendants for violations of the Fair Labor Standards Act ("FLSA") 29 U.S.C. §§ 201 *et seq.* and of the New York Labor Law ("NYLL") N.Y. C.L.S. Labor §§ 650 *et seq.*, arising from Defendants' various willful and unlawful employment policies, patterns and/or practices.

2. Defendants have willfully and intentionally committed widespread violations of the FLSA and NYLL by engaging in a pattern and practice of failing to pay their employees, including

Plaintiff, minimum wage for each hour worked and overtime for all hours worked in excess of forty (40) in each workweek.

3. Defendants willfully failed to record all of the time that Plaintiff and similarly situated employees work or worked, including time worked in excess of forty (40) hours per week.

4. Plaintiff alleges pursuant to the FLSA, that she is entitled to recover from the Defendants: (1) unpaid wages; (2) unpaid overtime, (3) liquidated damages; (4) prejudgment and post-judgment interest; and/or (5) attorneys' fees and costs.

5. Plaintiff further alleges pursuant to the NYLL and the New York Minimum Wage Order for the Hospitality Industry 12 N.Y.C.R.R. § 146 ("NYCRR") that she is entitled to recover from the Defendants: (1) unpaid wages, (2) unpaid overtime, (3) unpaid spread-of-hours, (4) liquidated damages equal to one hundred percent (100%) of the sum of unpaid minimum wages, unpaid overtime, and unpaid spread-of-hours under the New York Wage Theft Prevention Act 2009 N.Y. S.N. 8380, (5) up to five thousand dollars ($5,000.00) per Plaintiff for Defendants' failure to provide a Time of Hire Notice detailing rates of pay and payday; (6) up to five thousand dollars ($5,000.00) per Plaintiff for Defendants' failure to provide paystubs that accurately and truthfully listed each employee's hours along with the employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from the employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day; (7) nine percent (9%) simple prejudgment interest as provided by the New York Civil Practice Law and Rules ("CPLR") N.Y.C.P.L.R. § 5004, (8) post-judgment interest, and (9) attorneys' fees and costs.

## **JURISDICTION AND VENUE**

6.  This Court has original federal question jurisdiction over this controversy under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331, and has supplemental jurisdiction over the NYLL claims pursuant to 28 U.S.C. § 1367(a).

7.  Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §§ 391(b) and (c), because Defendants conduct business in this District, and the acts and omissions giving rise to the claims herein alleged took place in this District.

## PLAINTIFF

8.  Plaintiff CHUI-FAN KWAN a/k/a Connie Kwan ("KWAN") was employed by Defendants to work at Dream Hotel Downtown located at 355 W 16th Street, New York, NY, first as a room attendant and then as a floor manager.

## DEFENDANTS

9.  SAHARA DREAMS CO. II INC. f/k/a Sahara Dreams Co. Inc. f/k/a Sahara Dreams Limited d/b/a Dream Hotel Downtown, is a domestic business corporation organized under the laws of the State of New York with a principal address 1251 Avenue of the Americas, Suite 394, New York, NY 10020.

10. SAHARA DREAMS CO. II INC. f/k/a Sahara Dreams Co. Inc. f/k/a Sahara Dreams Limited d/b/a Dream Hotel Downtown is a domestic business corporation organized under the laws of the State of New York with a principal address 1251 Avenue of the Americas, Suite 394, New York, NY 10020.

11. SAHARA DREAMS CO. II INC. f/k/a Sahara Dreams Co. Inc. f/k/a Sahara Dreams Limited d/b/a Dream Hotel Downtown operates a hotel located at 355 W 16th Street, New York, NY 10011.

12. SAHARA DREAMS CO. II INC. f/k/a Sahara Dreams Co. Inc. f/k/a Sahara Dreams Limited d/b/a Dream Hotel Downtown is a business engaged in interstate commerce that has gross sales in excess of five hundred thousand dollars ($500,000.00) per year.

13. SAHARA DREAMS CO. II INC. f/k/a Sahara Dreams Co. Inc. f/k/a Sahara Dreams Limited d/b/a Dream Hotel Downtown purchased and handled goods moved in interstate commerce.

14. SAHARA DREAMS LLC f/k/a Sahara Dreams LLC d/b/a Dream Hotel Downtown is a foreign limited liability company organized under the laws of the State of Delaware with a principal address 875 Third Avenue, 9th Floor, New York, NY 10022.

15. Prior to July 25, 2012, SAHARA DREAMS LLC f/k/a Sahara Dreams LLC d/b/a Dream Hotel Downtown was a domestic limited liability company organized under the laws of the State of New York with a principal address 875 Third Avenue, 9th Floor, New York, NY 10022.

16. SAHARA DREAMS LLC f/k/a SAHARA DREAMS LLC d/b/a Dream Hotel Downtown operates a hotel located at 355 W 16th Street, New York, NY 10011.

17. SAHARA DREAMS LLC f/k/a SAHARA DREAMS LLC d/b/a Dream Hotel Downtown is a business engaged in interstate commerce that has gross sales in excess of five hundred thousand dollars ($500,000.00) per year.

18. SAHARA DREAMS LLC f/k/a SAHARA DREAMS LLC d/b/a Dream Hotel Downtown purchased and handled goods moved in interstate commerce.

19. SAHARA HAMPSHIRE HOTEL MANAGEMENT LLC d/b/a Dream Hotel Midtown is a foreign limited liability company organized under the laws of the State of Delaware with a principal address 1 Central Park West, Suite 30 F, New York, NY 10023.

20. SAHARA HAMPSHIRE HOTEL MANAGEMENT LLC d/b/a Dream Hotel Midtown operates a hotel located at 210 W 55th Street, New York, NY 10019.

21. SAHARA HAMPSHIRE HOTEL MANAGEMENT LLC d/b/a Dream Hotel Midtown is a business engaged in interstate commerce that has gross sales in excess of five hundred thousand dollars ($500,000.00) per year.

22. SAHARA HAMPSHIRE HOTEL MANAGEMENT LLC d/b/a Dream Hotel Midtown purchased and handled goods moved in interstate commerce.

23. SAHARA HAMPSHIRE HOTEL MANAGEMENT CO. II INC. f/k/a Sahara Hampshire Hotel Management Co. Inc. f/k/a Sahara Hampshire Hospitality Management Limited d/b/a Dream Hotel Midtown was a domestic business corporation organized under the laws of the State of New York with a principal address 1251 Avenue of the Americas, Suite 934, New York, NY 10020.

24. Between June 21, 2012 and August 31, 2016, SAHARA HAMPSHIRE HOTEL MANAGEMENT CO. II INC. f/k/a Sahara Hampshire Hotel Management Co. Inc. f/k/a Sahara Hampshire Hospitality Management Limited d/b/a Dream Hotel Midtown operated a hotel located at 210 W 55th Street, New York, NY 10019.

25. SAHARA HAMPSHIRE HOTEL MANAGEMENT CO. II INC. f/k/a Sahara Hampshire Hotel Management Co. Inc. f/k/a Sahara Hampshire Hospitality Management Limited d/b/a Dream Hotel Midtown was a business engaged in interstate commerce that had gross sales in excess of five hundred thousand dollars ($500,000.00) per year.

26. SAHARA HAMPSHIRE HOTEL MANAGEMENT CO. II INC. f/k/a Sahara Hampshire Hotel Management Co. Inc. f/k/a Sahara Hampshire Hospitality Management Limited d/b/a Dream Hotel Midtown purchased and handled goods moved in interstate commerce.

27. HAMPSHIRE HOTELS & RESORTS, LLC f/k/a Hampshire Hotels & Resorts Limited Liability Company d/b/a Hampshire Brand, Hotel & Asset Management is a domestic limited liability company organized under the laws of the State of New York with a principal address 200 W 55th Street, 9th Floor, New York, NY 10019.

28. HAMPSHIRE HOTELS & RESORTS, LLC f/k/a Hampshire Hotels & Resorts Limited Liability Company d/b/a Hampshire Brand, Hotel & Asset Management operates a group of hotels including those located at 355 W 16th Street, New York, NY 10011 and 210 W 55th Street, New York, NY 10019 as a central office and/or holding company.

29. HAMPSHIRE HOTELS & RESORTS, LLC f/k/a Hampshire Hotels & Resorts Limited Liability Company d/b/a Hampshire Brand, Hotel & Asset Management is a business engaged in interstate commerce that has gross sales in excess of five hundred thousand dollars ($500,000.00) per year.

30. HAMPSHIRE HOTELS & RESORTS, LLC f/k/a Hampshire Hotels & Resorts Limited Liability Company d/b/a Hampshire Brand, Hotel & Asset Management purchased and handled goods moved in interstate commerce.

31. DREAM HOTEL GROUP, LLC f/k/a Hampshire Hotels Management LLC is a domestic limited liability company organized under the laws of the State of New York with a principal address 200 W 55th Street, 9th Floor, New York, NY 10019.

32. DREAM HOTEL GROUP, LLC f/k/a Hampshire Hotels Management LLC operates a group of hotels including those located at 355 W 16th Street, New York, NY 10011 and 210 W 55th Street, New York, NY 10019 as a central office and/or holding company.

33. DREAM HOTEL GROUP, LLC f/k/a Hampshire Hotels Management LLC is a business engaged in interstate commerce that has gross sales in excess of five hundred thousand dollars ($500,000.00) per year.

34. DREAM HOTEL GROUP, LLC f/k/a Hampshire Hotels Management LLC purchased and handled goods moved in interstate commerce.

35. NORTHQUAY PROPERTIES LLC d/b/a Northquay Properties is a domestic limited liability company organized under the laws of the State of New York with a principal address 200 W 55th Street, Suite 42, New York, NY 10019.

36. NORTHQUAY PROPERTIES LLC d/b/a Northquay Properties operates a proprietary payroll company servicing a group of hotels including those located at 355 W 16th Street, New York, NY 10011 and 210 W 55th Street, New York, NY 10019.

37. NORTHQUAY PROPERTIES LLC d/b/a Northquay Properties is a business engaged in interstate commerce that has gross sales in excess of five hundred thousand dollars ($500,000.00) per year.

38. NORTHQUAY PROPERTIES LLC d/b/a Northquay Properties purchased and handled goods moved in interstate commerce.

39. NORTHQUAY PROPERTIES MANAGEMENT CORP. d/b/a Northquay Properties is a domestic business corporation organized under the laws of the State of New York with a principal address 200 W 55th Street, Suite 42, New York, NY 10019.

40. NORTHQUAY PROPERTIES MANAGEMENT CORP. d/b/a Northquay Properties operates a proprietary payroll company servicing a group of hotels including those located at 355 W 16th Street, New York, NY 10011 and 210 W 55th Street, New York, NY 10019.

41. NORTHQUAY PROPERTIES MANAGEMENT CORP. d/b/a Northquay Properties is a business engaged in interstate commerce that has gross sales in excess of five hundred thousand dollars ($500,000.00) per year.

42. NORTHQUAY PROPERTIES MANAGEMENT CORP. d/b/a Northquay Properties purchased and handled goods moved in interstate commerce.

43. At all relevant times, the work performed by Plaintiff was directly essential to the businesses operated by Defendants.

44. Plaintiff has fulfilled all conditions precedent to the institution of this action and/or conditions have been waived.

## STATEMENT OF FACTS

*Defendants Constitute an Enterprise*

45. Defendants SAHARA DREAMS CO. II INC. f/k/a Sahara Dreams Co. Inc. f/k/a Sahara Dreams Limited d/b/a Dream Hotel Downtown, SAHARA DREAMS LLC f/k/a Sahara Dreams LLC d/b/a Dream Hotel Downtown, SAHARA HAMPSHIRE HOTEL MANAGEMENT LLC d/b/a Dream Hotel Midtown, SAHARA HAMPSHIRE HOTEL MANAGEMENT CO. II INC. f/k/a Sahara Hampshire Hotel Management Co. Inc. f/k/a Sahara Hampshire Hospitality Management Limited d/b/a Dream Hotel Midtown, and DREAM HOTEL GROUP, LLC f/k/a Hampshire Hotels Management LLC, operate a pair of luxury hotels called "Dream Hotel" located in downtown and midtown Manhattan (hereafter the "Dream Hotel Group").

46. The two Dream Hotel locations are themselves part of a larger group of luxury hotels doing business variously as Dream Hotel, Time Hotel, The Chatwal, and Night Hotel. The group (hereafter "Hampshire Hotels & Resorts Group") is managed by HAMPSHIRE HOTELS & RESORTS, LLC f/k/a Hampshire Hotels & Resorts Limited Liability Company d/b/a Hampshire Brand, Hotel & Asset Management as a central office and/or holding company with a centralized

Human Resources department that has branches in the various Hampshire Hotels & Resorts Group locations; that prepares employee handbooks and work rules for the various Hampshire Hotels & Resorts Group locations; that keeps and maintains records of employee files and in particular employee evaluations and employee discipline; that drafts and marks with its corporate name (or occasionally the "Dream Hotel Group" or "Dream Downtown" name and logo) employee evaluation, employee discipline, employee onboarding, injury/incident report, and other forms which it then distributes to the various Hampshire Hotels & Resorts Group locations; and that has decision-making authority over employee promotion and salary changes.

47. Plaintiff KWAN's onboarding forms, including her initial application, emergency contact card, and acknowledgement of receipt of employee code of conduct form, are marked with the name and corporate logo of "Hampshire Brand, Hotel & Asset Management," a doing-business-as name of Hampshire Hotels & Resorts LLC.

48. Two of Plaintiff KWAN's personnel action forms, and a guest incident report, are likewise marked with the name and corporate logo of "Hampshire Brand, Hotel & Asset Management." Each of these forms has a "location" field where the term "Dream Downtown" is printed but where other locations could be entered.

49. One of Plaintiff KWAN's personnel action forms is marked with the name and corporate logo of "Dream Hotel Group," and has a "location" field where the term "Dream Downtown" is printed but where other locations could be entered.

50. NORTHQUAY PROPERTIES LLC d/b/a Northquay Properties and NORTHQUAY PROPERTIES MANAGEMENT CORP. d/b/a Northquay Properties maintain a centralized payroll for the Hampshire Hotel & Resorts Group, and prepare payroll for, among other locations, Dream Hotel Downtown, and prepared Plaintiff's payroll throughout her employment at Dream

Downtown.

51. At all relevant times herein, Dream Hotel Group and Hampshire Hotels & Resorts Group was, an continues to be, a single and joint employer with a high degree of interrelated and unified operations—including the transfer of employees between Dream Hotel locations—and shares common management and centralized control of labor relations through the holding companies/central office DREAM HOTEL GROUP, LLC f/k/a Hampshire Hotels Management LLC and HAMPSHIRE HOTELS & RESORTS, LLC f/k/a Hampshire Hotels & Resorts Limited Liability Company d/b/a Hampshire Brand, Hotel & Asset Management which sets common employee-facing policies such as work rules, common ownership and control by the Chatwal family, a common website that lists all Hampshire Hotels & Resorts Group locations, a common business purpose and interrelated business goals.

52. Plaintiff KWAN's paystubs are marked with the entity name "Sahara Dreams LLC," however, her payroll register records are marked with the name "Northquay Properties."

53. Michael Lindenbaum had the titles Managing Director of Dream Downtown and Vice President of Operations for Hampshire Hotels and Resorts concurrently during the period of Plaintiff's employment.

54. Rachel Sit, had the title Director of Human Resources for Dream Hotels (emphasis added) during the period of Plaintiff's employment.

55.    Dream Hotel Group transfers employees between hotels that it operates, including a floor manager named "Joley Ferreras" who is known to the Plaintiff to have worked at first at Dream Hotel Downtown before being transferred to Dream Hotel Midtown.

56.    Dream Hotel Group is an enterprise engaged in interstate commerce that has gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year.

57.     Dream Hotel Group produces, purchases and handles goods moved in interstate commerce.

58.     Hampshire Hotels & Resorts Group operates eleven (11) hotels in New York:

    a.   Dream Hotel Downtown, 355 W 16th Street, New York, NY 10011;

    b.   Dream Hotel Midtown, 210 W 55th Street, New York, NY 10019;

    c.   The Time New York, 224 W 49th Street, New York, NY 10019;

    d.   The Time Nyack, 400 High Avenue, Nyack, NY 10960;

    e.   The Chatwal New York, 130 W 44th Street, New York, NY 10036;

    f.   Night Hotel Times Square, 157 W 47th Street, New York, NY 10036;

    g.   Night Hotel New York, 132 W 45th Street, New York, NY 10036;

    h.   The Gallivant Times Square, 234 W 48th Street, New York, NY 10036;

    i.   Hampton Inn Manhattan Times Square North, 851 Eighth Avenue, New York, NY 10019;

    j.   Days Inn Hotel New York City Broadway, 215 W 94th Street, New York, NY 10025; and

    k.   Hilton Garden Inn Times Square, 790 Eighth Avenue, New York, NY 10019.

59. Dream Hotel Group is currently constructing one(1) additional hotel in New York:

    a.   Dream Times Square, New York, NY (USA).

60. All the aforementioned locations are listed on Dream Hotel Group's website (http://www.dreamhotelgroup.com/hotels-en.html).

***Defendants committed the following alleged acts knowingly, intentionally and willfully against the Plaintiff, the FLSA Collective, and the Class.***

61. At all relevant times, Defendants knowingly and willfully failed to pay Plaintiff and similarly situated employees at least the New York minimum wage for each hour worked.

62. While employed by Defendants, Plaintiff was not exempt under federal and state laws requiring employers to pay employees overtime.

63. At all relevant times, Defendants knowingly and willfully failed to pay Plaintiff and similarly situated employees their lawful overtime of one-and-one-half times (1.5x) their regular rate of pay for all hours worked over forty (40) in a given workweek.

64. At all relevant times, Defendants knowingly and willfully failed to keep full and accurate records of Plaintiff's hours worked and wages paid.

65. Defendants failed to keep full and accurate records in order to mitigate liability for wage violations.

66. At all relevant times, Defendants knowingly and willfully failed to provide Plaintiff and similarly situated employees with Time of Hire Notices reflecting rates of pay and payday as well as paystubs that listed the employee's name, the employer's name, the employer's address and telephone number, the employee's rate or rates of pay, any deductions made from employees' wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day.

67. Defendants knew that the nonpayment of wages for all hours worked and the nonpayment of wages at one and one half time (1.5x) employees' regular rates would financially injure Plaintiff and similarly situated employees, and violate state and federal laws.

68. At all relevant times, Defendants failed to post the required New York State Department of Labor posters regarding minimum wage pay rates, overtime pay, and pay day.

*Plaintiff CHUI-FAN KWAN a/k/a Connie Kwan*

69. From on or about May 16, 2011, to April 30, 2015, Plaintiff KWAN worked at Dream Hotel Downtown located at 355 W 16th Street, New York, NY 10011 as a room attendant.

70. On or about May 4, 2015, a floor manager at Dream Hotel Downtown, Joley Ferreras was transferred from Dream Hotel Downtown to Dream Hotel Midtown. Upon information and belief, Ms Ferreras is currently a floor manager at Dream Hotel Midtown.

71. From on or about May 4, 2015, to August 6, 2016, Plaintiff KWAN worked at Dream Hotel Downtown located at 355 W 16th Street, New York, NY 10011 as a floor manager, taking the place of Joley Ferreras who had been transferred to Dream Hotel Midtown.

72. As a room attendant, Plaintiff KWAN was required to clean guest rooms.

73. As a room attendant, Plaintiff KWAN was not assigned guest rooms to clean by floor managers. Plaintiff KWAN was assigned guest rooms to clean by the Office Coordinator, whose orders were relayed through the floor managers.

74. As a floor manager, Plaintiff KWAN was required to physically check the fifteen rooms cleaned by other room attendants each workday, as well as the halls on her floor, the stairwells leading to and from her floor, and the supply closet on her floor.

75. Any VIP rooms checked by Plaintiff KWAN and other floor managers were subject to re-check by housekeeping directors.

76. As a floor manager, Plaintiff KWAN did not have the authority to assign room attendants their rooms to clean. The Office Coordinator would assign room attendants their rooms to clean on a tablet device.

77. As a floor manager, Plaintiff KWAN did not have the authority to hire employees, terminate employees, recommend that employees be hired or terminated, or assign employees tasks or work schedules.

78. As a floor manager, Plaintiff KWAN did not have the authority to approve employee vacation requests.

79. As a floor manager, Plaintiff KWAN was not given an office space. Only hotel Directors had office space.

80. As a floor manager, Plaintiff KWAN was also required to clean rooms whenever there were not enough room attendants on duty to clean the fifteen rooms they had to clean in the time they had to clean them.

81. Upon information and belief, all floor managers at Dream Hotel Downtown and other locations operated by Dream Hotel Group are paid on the same basis, have the same job duties, and lack the same authority with respect to determining employees' terms and conditions of employment as Plaintiff KWAN.

82. Other floor managers known to Plaintiff KWAN who were paid on the same basis, with the same job duties, and lacking the same authority as Plaintiff KWAN include Joley Ferreras, "Samgmo," "Posenda," a Russian woman, and "Sharon," an African woman.

83. "Samgmo," "Posenda," and "Sharon" were transferred to Dream Hotel Downtown from other locations operated by the Defendants.

84. At the time she was hired, Plaintiff KWAN was not given a written notice in her primary language (Chinese) regarding all of the following items: her rate or rates of pay and basis thereof; allowances claimed as part of the minimum wage; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical and mailing addresses of the employer's main office or principal place of business; and the telephone number of the employer.

85. From on or about May 16, 2011, to May 3, 2015, Plaintiff KWAN's regular work schedule as a room attendant ran from 8:30 to 16:30, with one (1) hour-long break for lunch during the day, five days per week.

86. As a result, from on or about May 16, 2011 to May 3, 2015, Plaintiff KWAN worked approximately forty (40) hours per week.

87. At all relevant times, Plaintiff KWAN was not paid for all hours worked as a room attendant because Defendants maintained a policy of time-shaving.

88. From on or about May 16, 2011 to May 3, 2015, Plaintiff KWAN would frequently be paid as if she had taken a 1-hour lunch break even if her time records showed she took a lunch break as short as 16 minutes, as on February 7, 2013.

89. From on or about May 16, 2011 to May 3, 2015, Plaintiff KWAN would frequently be required to work before 08:30 and after 16:30.

90. For a representative example, for the pay period from February 4 to February 10, 2013, Plaintiff KWAN worked: from 08:23 to 16:25 with a lunch break from 14:29 to 14:57 on February 4; from 08:29 to 16:24 with a lunch break from 13:44 to 14:22 on February 5; from 08:23 to 16:23 with a lunch break from 14:18 to 15:02 on February 6; from 08:23 to 16:47 with a lunch break from 15:18 to 15:34 on February 7; and from 08:23 to 16:41 with a lunch break from 13:47 to 14:17 on February 8. For this pay period Plaintiff KWAN was paid for 35.5 straight-time hours on February 14, 2013, when her recorded time amounted to 38.05 straight-time hours.

91. For another representative example, for the pay period of June 10 to June 16, 2013, Plaintiff KWAN worked: from 08:24 to 16:50 with a lunch break from 15:34 to 15:59 on June 10; from 08:24 to 16:24 with a lunch break from 13:52 to 14:13 on June 11; from 08:23 to 16:58 with a lunch break from 14:00 to 14:31 on June 12; from 08:24 from 08:27 to 16:57 with a lunch break from 15:55 to 16:11 on June 13; 08:30 to 16:54 with a lunch break from 15:45 to 15:51 on June 14; and from 08:59 to 16:19 with a lunch break from 13:00 to 14:00 on June 15. For this pay period

Plaintiff KWAN was paid for 40 straight-time hours and 3 overtime hours on June 20, 2013, when her recorded time amounted to 40 straight-time hours and 6.73 overtime hours.

92. From on or about May 4, 2015 to August 6, 2016, Plaintiff KWAN's regular work schedule regular work schedule as a floor manager ran: from 8:30 to approximately 17:30 four days per week, and from 13:00 to 21:00 one day per week.

93. From on or about May 4, 2015 to August 6, 2016, Plaintiff KWAN actually left work around 18:00 on days she was scheduled to work until 17:30, and around 21:30 on days she was scheduled to work until 21:00.

94. As a floor manager, Plaintiff KWAN was given at most ten (10) minutes to eat during the day. She was required to use all other time for room check.

95. As a result, from on or about May 4, 2015 to August 6, 2016, Plaintiff KWAN worked approximately forty-six and one half (46.5) hours per week.

96. There were a total of three or four floor managers on duty each morning shift beginning at 8:30.

97. There was only ever one floor manager on duty each evening shift beginning at 13:00.

98. Morning shift and evening shift floor managers had the same job duties.

99. During the course of her employment, Defendants willfully failed to keep records of Plaintiff KWAN's hours worked.

100. From on or about May 16, 2011 to June 3, 2012, KWAN was paid at an hourly rate of sixteen dollars ($16.00) per hour as a room attendant.

101. From on or about June 4, 2012 to April 28, 2013, KWAN was paid at an hourly rate of seventeen dollars and fifty cents ($17.50) per hour as a room attendant.

102.     From on or about April 29, 2013 to June 30, 2014, KWAN was paid at an hourly rate of eighteen dollars and fifty cents ($18.50) per hour as a room attendant.

103.     From on or about July 1, 2014 to May 3, 2015, KWAN was paid at an hourly rate of nineteen dollars and fifty cents ($19.50) per hour as a room attendant.

104.     From on or about May 4, 2015 to June 30, 2016, KWAN was paid a salary of forty-five thousand dollars ($45,000.00) per year as a floor manager.

105.     From on or about July 1, 2016 to August 6, 2016, KWAN was paid a salary of forty-six thousand, three hundred forty-nine dollars and eighty-six cents ($46,349.86) per year as a floor manager.

106.     Throughout her employment, Plaintiff KWAN was given statements every week that failed to accurately list all of the following: the dates of work covered by that payment of wages;  her name; the name of the employer;  the address and phone number of the employer;  her rate or rates of pay and basis thereof; her  gross wages;  her deductions;  allowances, if any, claimed as part of the minimum wage; net wages; his regular hourly rate or rates of pay; her overtime rate or rates of pay;  her number of regular hours worked, and her number of overtime hours worked.

107.     Plaintiff KWAN was not paid for all of her hours worked as a floor manager because Defendants misclassified her and other floor managers as managerial employees.

108.     For the period between May 4, 2015 to June 30, 2016, Plaintiff KWAN was given pay stubs that showed her pay rate as $24.7252 per hour and her hours worked as 35 per week. This pay rate and hours worked per week were cooked to produce Plaintiff KWAN's salary of $45,000.00 per year, and bore no resemblance to Plaintiff KWAN's actual hours worked.

109.     For the period between July 1 and August 6, 2016, Plaintiff KWAN was given pay stubs that showed her pay rate as $25.4669 per hour and her hours worked as 35 per week. This

pay rate and hours worked per week were cooked to produced Plaintiff KWAN's salary of $46,349.86, and bore no resemblance to Plaintiff KWAN's actual hours worked.

110.     Plaintiff KWAN was misclassified as an exempt employee not entitled to overtime.

111.     Plaintiff KWAN was not paid overtime for hours worked above 40 in any given workweek.

112.     In 2016, Plaintiff KWAN was promised a one thousand dollar ($1,000.00) bonus that she never received, despite receiving a statement that said the bonus was paid.

113.     Plaintiff KWAN was promised 3 weeks of paid vacation at her regular rate, but was not paid after she took her vacation.

## COLLECTIVE ACTION ALLEGATIONS

114.     Plaintiff brings this action individually and on behalf of all other current and former non-exempt employees who have been or were employed by the Defendants for up to the last three (3) years, through entry of judgment in this case (the "Collective Action Period") and who were not compensated at least the hourly minimum wage and/or overtime for all hours worked in excess of forty (40) per week (the "Collective Action Members.")

## CLASS ACTION ALLEGATIONS

115.     Plaintiff brings her NYLL claims pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 23, on behalf of two sub-classes: all room attendants employed by Defendants in the state of New York and all floor managers employed by Defendants in the State of New York on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

116.     All said persons, including Plaintiff, are referred to herein as the "Class." The room attendants are known as the "Room Attendant Sub-Class" and the floor managers are known as the "Floor Manager Sub-Class."

117.    The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the positions held, and the rate of pay for each Class member is also determinable from Defendants' records. For purpose of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under said Fed. R. Civ. P. 23.

*Numerosity*

118.    The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, and the facts on which the calculation of the number can be based are presently within the sole control of the Defendants, upon information and belief, there are more than seventy (70) members of the Class.

*Commonality*

119.    There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a.    Whether Defendant employed Plaintiff and the Class members within the meaning of the NYLL;

b.    Whether Plaintiff and the Class members were misclassified as overtime-exempt employees;

c.    Whether Plaintiff and the Class members were entitled to and paid minimum wage under the NYLL;

d.    Whether Plaintiff and the Class members were entitled to and owed unpaid wage for at least some hours worked;

e.  Whether Plaintiff and the Class members were required to work during their unpaid breaks;

f.  Whether Plaintiff and the Class members have their time shaved off of the time record;

g.  Whether Plaintiff and the Class members were entitled to and paid overtime under the NYLL;

h.  Whether Defendants provided a Time of Hire Notice detailing rates of pay and payday at the start of Plaintiff's and the Class members' employment, or timely thereafter;

i.  Whether Defendants provided paystubs detailing the rates of pay and credits taken toward the minimum wage to Plaintiff and the Class members each payday; and

j.  At what common rate, or rates subject to a common method of calculation were and are Defendants required to pay the Class members for their work.

120.    In addition to the above issues common to the whole Class, the following issues are common only to the Floor Manager Sub-Class:

a.  Whether Defendants misclassified floor managers as exempt employees in order to avoid paying overtime.

*Typicality*

121.    Plaintiff's claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate policies of Defendants, as alleged herein, of failing to pay minimum wage and/or overtime. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefitted from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff

and other Class members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

*Adequacy*

122.    Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in representing Plaintiff in both class action and wage-and-hour employment litigation cases.

*Superiority*

123.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy, particularly in the context of wage-and-hour litigation where individual Class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly-situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expenses that numerous individual actions engender. Because the losses, injuries, and damages suffered by each of the individual Class members are small in the sense pertinent to class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. Further, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class members' rights and the disposition of their

interests through actions to which they were not parties. The issues in this action can be decided by means of common class-wide relief. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

124.    Defendants and other employers throughout the state of New York violate the NYLL. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

## STATEMENT OF CLAIMS

### COUNT I.
**[Violations of the Fair Labor Standards Act—Nonpayment of Minimum Wage
Brought on behalf of the Plaintiff and the FLSA Collective]**

125.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

126.    At all relevant times, Defendants had a policy and practice of refusing to pay the statutory minimum wage to Plaintiff, and the similarly-situated Collective Action Members, for some or all of the hours they worked.

127.    At all relevant times, Defendants had a policy and practice of time-shaving that applied to the Plaintiff and the Collective.

128.    The FLSA provides that any employer who violates the provisions of 29 U.S.C. § 206 shall be liable to the employees affected in the amount of their unpaid minimum compensation, and in an additional amount as liquidated damages.

129.    Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by failing to compensate Plaintiff and the Collective Action Members at the statutory

TTroy                                          23                                       Complaint

minimum wage when they knew or should have known that such was due and that failing to do so would financially injure Plaintiff and the Collective Action Members.

## COUNT II.
**[Violations of the New York Labor Law—Nonpayment of Minimum Wage Brought on behalf of the Plaintiff, the Room Attendant Subclass, and the Floor Manager Subclass]**

130.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

131.    At all relevant times, Plaintiff was employed by Defendants within the meaning of NYLL N.Y. C.L.S. Labor §§ 2 and 651.

132.    At all relevant times, Defendants had a policy and practice of refusing to pay the statutory minimum wage to Plaintiff and the Class for some or all of the hours they worked.

133.    At all relevant times, Defendants had a policy and practice of time-shaving that applied to the Plaintiff and the Class.

134.    Defendants knowingly and willfully violated Plaintiff's and similarly-situated Class Members' rights by failing to pay them minimum wages in the lawful amount for hours worked.

135.    After April 9, 2011, under the New York Wage Theft Prevention Act 2009 N.Y. S.N. 8380, an employer who fails to pay the minimum wage shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to one hundred percent (100%) of the shortfall plus interest.

## COUNT III.
**[Violations of the Fair Labor Standards Act—Nonpayment of Overtime Brought on behalf of the Plaintiff and the FLSA Collective]**

136.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

137.    The FLSA provides that no employer engaged in commerce shall employ a covered employee for a work week longer than forty (40) hours unless such employee receives compensation for such employment at a rate not less than one and one half times (1.5x) the regular rate at which he is employed, or one and one half times (1.5x) the minimum wage, whichever is greater. 29 U.S.C. § 207(a).

138.    Defendants' failure to pay Plaintiff and the FLSA Collective overtime violated the FLSA.

139.    At all relevant times, Defendants had, and continue to have, a policy and practice of refusing to pay overtime at the statutory rate to Plaintiff and the Collective Action Members for all hours worked in excess of forty (40) per workweek, which violated and continues to violate the FLSA, 29 U.S.C §§ 201, *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a).

140.    At all relevant times, Defendants had a policy and practice of time-shaving some of the overtime hours that Plaintiff and the Collective worked.

141.    At all relevant times, Defendants had a policy and practice of misclassifying floor managers, including Plaintiff, as exempt from overtime.

142.    The FLSA and supporting regulations require employers to notify employees of the requirements of the employment law. 29 C.F.R. § 516.4.

143.    Defendants willfully failed to notify Plaintiff and the FLSA Collective of the requirements of their employment laws in order to facilitate their exploitation of Plaintiff's and the FLSA Collective Members' labor.

144.    Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and the Collective Members the statutory overtime rate of time and one half for all hours worked in excess of forty (40) per week when they

knew or should have known that failing to do so would financially injure Plaintiff and the Collective.

## COUNT IV.
### [Violations of the New York Labor Law—Nonpayment of Overtime
**Brought on behalf of the Plaintiff, the Room Attendant Subclass, and the Floor Manager Subclass]**

145.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

146.    After April 9, 2011, under the New York Wage Theft Prevention Act 2009 N.Y. S.N. 8380, an employer who fails to pay overtime shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to one hundred percent (100%) of the shortfall plus interest.

147.    At all relevant times, Defendants had a policy and practice of refusing to pay overtime at one and one half times (1.5x) Plaintiff's and the Class Members' regular hourly rate or the minimum wage, whichever is greater for some or all of the hours that they worked.

148.    At all relevant times, Defendants had a policy and practice of time-shaving some of the overtime hours that Plaintiff and the Class Members worked.

149.    At all relevant times, Defendants had a policy and practice of misclassifying floor managers as exempt from overtime.

150.    Defendants' failure to pay overtime violated the NYLL.

151.    Defendants' failure to pay overtime was not in good faith.

## COUNT V.
### [Violations of the New York Labor Law—Failure to Keep Records
**Brought on behalf of the Plaintiff and the Rule 23 Class]**

152.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

153.     Defendants willfully failed to maintain, establish, and preserve Plaintiff's weekly payroll records for a period of not less than six years, as required by 12 N.Y.C.R.R. § 146-2.1.

154.     As a result of Defendants' unlawful conduct, Plaintiff have sustained damages including loss of earnings, in an amount to be established at trial, liquidated damages, prejudgment interest, costs, and attorneys' fees, pursuant to state law.

155.     Defendants failed to maintain adequate written records of actual hours worked and wages earned by Plaintiff in order to facilitate their exploitation of Plaintiff's labor.

156.     Defendants' failure to maintain adequate and accurate written records of actual hours worked and wages earned by Plaintiff was not in good faith.

### COUNT VI.
**[Violations of the New York Labor Law—Failure to Provide Time of Hire Wage Notice Brought on behalf of the Plaintiff and the Rule 23 Class]**

157.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

158.     NYLL requires employers to provide written notice of: the rate or rates of pay and the basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances clamed, if any, as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer, the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer. N.Y. C.L.S. Labor § 195-1(a).

159.     Defendants willfully failed to provide notice to employees in violation of NYLL, which requires all employers to provide written notice in the employee's primary language about the terms and conditions of employment related to rate of pay, regular pay cycle, and rate of overtime on his or his first day of employment.

160.     Defendants not only did not provide notice to each employee at time of hire, but failed to provide notice even after the fact.

161.     Due to Defendants' violations of NYLL, Plaintiff is entitled to recover from Defendants, jointly and severally, fifty dollars ($50.00) for each workday that the violation occurred or continued to occur, up to five thousand dollars ($5,000.00) for each Plaintiff, together with costs and attorneys' fees pursuant to N.Y. C.L.S. § 198(1-b).

## COUNT VII.
### [Violations of the New York Labor Law—Failure to Provide Pay Stub Brought on behalf of the Plaintiff and the Rule 23 Class]

162.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

163.     NYLL requires employers to provide detailed paystub information to employees every payday. N.Y. C.L.S. Labor § 195-1(d).

164.     Defendants have failed to make a good faith effort to comply with the NYLL with respect to the compensation of each Plaintiff, and did not provide adequate paystubs on or after each Plaintiff's payday.

165.     Due to Defendants' violations of NYLL, Plaintiff is entitled to recover from Defendants, jointly and severally, two hundred fifty dollars ($250.00) for each workday that the violation occurred or continued to occur, up to five thousand dollars ($5,000.00) for each Plaintiff, together with costs and attorneys' fees pursuant to N.Y. C.L.S. § 198(1-b).

## PRAYER FOR RELIEF

166.     WHEREFORE, Plaintiff, on his own behalf, and on the behalf of the FLSA Collective and Rule 23 Class, respectfully request that this Court enter a judgment providing the following relief:

    a.  Certification of this case as a collective action pursuant to FLSA;

b.  Issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in Collective, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b), and appointing Plaintiff and their counsel to represent the Collective Action members;

c.  A declaratory judgment that the practices complained of herein are unlawful under FLSA and NYLL;

d.  An injunction against Defendants, their officers, agents, successors, employees, representatives, and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices and policies set forth herein;

e.  An award of compensatory damages equal to the unpaid minimum wage, overtime, and spread of hours, and misappropriated tips due to Plaintiff and the Collective under FLSA, and to Plaintiff and the Class under the NYLL, plus punitive and/or liquidated damages equal to compensatory damages under the New York Wage Theft Prevention Act for Defendants' willful failure to pay minimum wage, overtime, and spread of hours;

f.  Up to five thousand dollars ($5,000.00) per Plaintiff for Defendants' failure to provide a Time of Hire notice detailing rates of pay and payday;

g.  Up to five thousand dollars ($5,000.00) per Plaintiff for Defendants' failure to provide paystubs that list employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day;

h.   An award of costs and expenses of this action together with reasonable attorneys' fees and expert fees pursuant to 29 U.S.C. § 216(b) and NYLL §§ 198 and 663;

i.   An award of prejudgment and post-judgment interest;

j.   Providing that if any amounts remain unpaid upon the expiration of ninety (90) days following the issuance of judgment, or ninety (90) days after expiration of the time to appeal with no appeal then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent (15%), as required by NYLL N.Y. C.L.S. Labor § 198(4).

k.   Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

Dated:  January 21, 2019                          TROY LAW, PLLC
        Flushing, NY                                    *Attorneys for the Plaintiff, proposed FLSA*
                                          *Collective and potential Rule 23 Class*


                                     /s/ John Troy
                                    John Troy (JT 0481)
                                    41-25 Kissena Boulevard, Suite 119
                                    Flushing, NY 11355
                                    Tel (718) 762-1324
                                    johntroy@troypllc.com