UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHUI-FAN KWAN,<br>*on her own behalf and on behalf of others*<br>*similarly situated,*<br><br>Plaintiff,<br><br>v.<br><br>SAHARA DREAMS CO. II INC.<br>  f/k/a Sahara Dreams Co. Inc.<br>  f/k/a Sahara Dreams Limited<br>  d/b/a Dream Hotel Downtown,<br><br>SAHARA DREAMS LLC<br>  f/k/a Sahara Dreams LLC<br>  d/b/a Dream Hotel Downtown,<br><br>HAMPSHIRE HOTELS & RESORTS, LLC<br>  f/k/a Hampshire Hotels & Resorts Limited<br>  Liability Company<br>  d/b/a Hampshire Brand, Hotel & Asset<br>  Management, and<br><br>DREAM HOTEL GROUP, LLC<br>  f/k/a Hampshire Hotels Management LLC,<br><br>Defendants. | Case No.  17-cv-4058<br><br>**29 U.S.C. §216(b) COLLECTIVE**<br>**ACTION AND FED. R. CIV. P.**<br><br>**23 CLASS ACTION**<br><br><br>**MEMORANDUM OF LAW IN**<br>**OPPOSITION TO PLAINTIFF'S**<br>**MOTION FOR CONDITIONAL**<br>**CERTIFICATION OF A**<br>**COLLECTIVE ACTION**<br>**PURSUANT TO 29 U.S.C. § 216**<br>**(b)** |

Date of Service: October 25, 2019

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................ 1

STATEMENT OF FACTS ............................................................................... 3

ARGUMENT ................................................................................................. 11

POINT I ....................................................................................................... 11

THE COURT SHOULD DENY PLAINTIFF'S MOTION TO CONDITIONALLY
CERTIFY A COLLECTIVE BASED UPON CONCLUSORY AND UNSUPPORTED
ASSERTIONS THAT THE DREAM DOWNTOWN HAD AN UNLAWFUL POLICY
OF FAILING TO PAY OVERTIME COMPENSATION ............................................ 11

A.   The Court Should Deny Certification Of A Collective Of Room Attendants
     Based Upon Plaintiff's Conclusory And Unsupported Assertions Of Plaintiff... 15

B.   The Court Should Deny Certification Of A Collective Of Floor Managers
     Based On Plaintiff's Conclusory And Unsupported Assertions ......................... 18

C.   If The Court Conditionally Grants Certification, It Should Limit The Class To
     Floor Managers At The Dream Downtown ....................................................... 21

POINT II

     PLAINTIFF'S NOTICE TO POTENTIAL OPT-IN PLAINTIFFS SHOULD
     BE REVISED ........................................................................................ 22

A.   The Proposed Notice Should Be Given Only In English ..................................... 23

B.   The Proposed Notice Should Only Be Given For A Three Year Period
     Preceding The Date The Court Conditionally Certifies The Collective .............. 23

C.   The Opt-In Period Should Be For A Period Of 60 Days ..................................... 24

D.   The Proposed Notice Should Not Make References To Plaintiff's NYLL
     Claims ...................................................................................................... 24

E.   The Proposed Notice Should Be Disseminated Only By Mail And Email And
     Contact Information Should Be Limited ........................................................... 24

CONCLUSION ............................................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*Ahmed v. T.J. Maxx Corp.*,
   103 F.Supp.3d 343 (S.D.N.Y. 2015)....................................................................18

*Ali v. New York City Health & Hosps. Corp.*,
   No. 11-CV-6393, 2013 U.S. Dist. LEXIS 44091 (S.D.N.Y. 2013)...................15, 16

*Anjum v. J.C. Penney Co.*,
   No. 13 CV 460, 2015 U.S. Dist. LEXIS 73820 (E.D.N.Y. 2015) ...........................22

*Brown v. Barnes & Noble, Inc.*,
   252 F. Supp. 3d 255 (S.D.N.Y. 2017)......................................................12, 18, 20

*Cheng Xia Wang v. Shun Lee Palace Restaurant, Inc.*,
   17 Civ. 0840, 2018 U.S. Dist. LEXIS 108437 (S.D.N.Y. 2018) .............................12

*Chun Lun Guan v. Long Island Bus. Inst., Inc.*,
   15 Civ. 2215, 2018 U.S. Dist. LEXIS 216363 (E.D.N.Y. 2018).............................20

*Cruz v. 70-30 Austin St. Bakery, Inc.*,
   18 Civ. 7408, 2019 U.S. Dist. LEXIS 73666 (S.D.N.Y. May 1, 2019)............13, 16

*Cunningham v. Elec. Data Sys. Corp.*,
   754 F. Supp. 2d 638 (S.D.N.Y. 2010)..................................................................12

*Dean v. Priceline.com Inc.*,
   3:00 Civ. 1273, 2001 U.S. Dist. LEXIS 24982 (D. Conn. 2001) ...........................21

*Diaz v. S & H Bondi's Dep't Store, Inc.*,
   10 Civ. 7676, 2012 U.S. Dist. LEXIS 5683 (S.D.N.Y. 2012) .................................12

*Encino Motorcars, LLC v. Navarro*,
   ___ U.S. _____, 138 S.Ct. 1134, 200 L.Ed.2d 433 (2018).....................................19

*Fa Ting Wang v. Empire State Auto Corp.*,
   14 Civ. 1491, 2015 U.S. Dist. LEXIS 99417 (E.D.N.Y, 2015)...............................22

*Fernandez v. Sharp Mont. Corp.*,
   16 Civ. 0551 (JGK)(SN), 2016 U.S. Dist. LEXIS 141916 (S.D.N.Y. 2016) .........12

*Fu v. Mee May Corp.*,
   15 Civ. 4549, 2016 U.S. Dist. LEXIS 53199 (S.D.N.Y. 2016) ........................12, 14

*Genxiang v. Hiro Sushi at Ollie's, Inc.*,
   17 Civ. 7066 (DF), 2019 U.S. Dist. LEXIS 22745 (S.D.N.Y. 2019) ......................................24

*Gjurovich v. Emmanuel's Marketplace, Inc.*,
   282 F. Supp. 2d 101 (S.D.N.Y. 2003)........................................................................................23

*Gomez v. Kitchenette 123 Inc.*,
   16 Civ. 3302, 2017 U.S. Dist. LEXIS 155257 (S.D.N.Y. 2017) .............................................13

*Guo v. Tommy's Sushi Inc.*,
   14 Civ. 3964, 2014 U.S. Dist. LEXIS 147981 (S.D.N.Y. 2015) ......................................14, 16

*Islam v. LX Ave. Bagels, Inc.*,
   18 Civ. 04895, 2019 U.S. Dist. LEXIS 173744 (S.D.N.Y. 2019).............................................24

*Jenkins v. TJX Companies Inc.*,
   853 F. Supp. 2d 317 (E.D.N.Y. 2012) ......................................................................................18

*Ji v. Jling Inc.*,
   15-CV-4194, 2016 U.S. Dist. LEXIS 66013 (E.D.N.Y. 2016) ........................................13, 16

*Khan v. Airport Mgmt. Servs., LLC*,
   No. 10 CIV. 7735, 2011 U.S. Dist. LEXIS 133134 (S.D.N.Y. 2011) ....................................18

*Knox v. John Varvatos Enters.*,
   282 F.Supp.3d 644 (S.D.N.Y. 2017)........................................................................................23

*Korenblum v. Citigroup, Inc.*,
   195 F.Supp.3d 475 (S.D.N.Y. 2015)........................................................................................13

*Kuebel v. Black & Decker*,
   643 F.3d 352 (2d Cir. 2011).....................................................................................................20

*Lijun Geng v. Shu Han Ju Rest. II Corp.*,
   18 Civ. 12220, 2019 U.S. Dist. LEXIS 154246 (S.D.N.Y. 2019) ..........................................21

*Mason v. Lumber Liquidators, Inc.*,
   17 Civ. 4780, 2019 U.S. Dist. LEXIS 80654 (E.D.N.Y. 2019)........................................19, 25

*Mata v. Foodbridge LLC*,
   14 Civ. 8754, 2015 U.S. Dist. LEXIS 70550 (E.D.N.Y. 2015)............................13, 14, 16, 19

*Michael v. Bloomberg, L.P.*,
   Index No. 14 Civ. 2657, 2015 U.S. Dist. LEXIS 51030 (S.D.N.Y. 2015) .............................25

*Morales v. Plantworks, Inc.*,
   No. 05-CV-2349, 2006 U.S. Dist. LEXIS 4267, 2006 WL 278154 (S.D.N.Y.
   2006) ...................................................................................................................................15, 16

*Myers v. Hertz Corp.*,
   624 F.3d 537 (2d Cir. 2010)........................................................................................12, 20

*Ornrat Keawsri v. Ramen-Ya Inc.*,
   17 Civ. 2406 (VEC), 2018 U.S. Dist. LEXIS 936 (S.D.N.Y. 2018) ......................................24

*In re Penthouse Exec. Club*,
   2010 U.S. Dist. LEXIS 114743 (S.D.N.Y. 2010)....................................................................23

*Salim Shahriar v. Smith & Wollensky Rest. Group, Inc.*,
   659 F.3d 234 (2d Cir. 2011)....................................................................................................3

*Sanchez v. JMP Ventures, L.L.C.*,
   13 Civ. 7264, 2014 U.S. Dist. LEXIS 14980 (S.D.N.Y. 2014) ...................................12, 14, 16

*Shanfa Li v. Chinatown Take-Out Inc.*,
   16 Civ. 7787, 2018 U.S. Dist. LEXIS 28693 (S.D.N.Y. 2018) .........................................14, 16

*Sharma v. Burberry Ltd.*,
   52 F. Supp. 3d 443 (E.D.N.Y. 2014) ......................................................................................22

*Tanski v. Avalonbay Communities, Inc.*,
   No. CV 15-6260, 2017 U.S. Dist. LEXIS 112506 (E.D.N.Y. 2017)........................................21

*Wright v. Aargo Sec. Servs.*,
   2001 U.S. Dist. LEXIS 882 (S.D.N.Y. 2001).........................................................................19

*Zhenkai Sun v. Sushi Fussion Express, Inc.*,
   16 Civ. 4840, 2018 U.S. Dist. LEXIS 37515 (S.D.N.Y. 2018) ................................................12

**Statutes**

29 U.S.C. §207 (a)(1)..............................................................................................................15

29 U.S.C. § 256(b)...................................................................................................................23

FSLA Section 216 (b) ...............................................................................................................1

**Other Authorities**

29 C.F.R. § 541.100(a)(1)—(4) ................................................................................................18

29 C.F.R. §541.102 ..................................................................................................................18

29 C.F.R. § 541.200(a).............................................................................................................19

29 C.F.R. §541.602 (a).............................................................................................................18

## PRELIMINARY STATEMENT

Plaintiff Chui-Fan Kwan ("Plaintiff" or "Kwan") was employed as a room attendant and floor manager from 2011 to 2016 exclusively at the Dream Hotel Downtown in New York City located at 355 West 16th St., New York, New York ("Dream Downtown").  Plaintiff moves to certify a collective under Section 216 (b) of the Fair Labor Standards Act ("FSLA") of all non-managerial employees of the Defendants Sahara Dreams Co. II Inc., Sahara Dreams LLC, Hampshire Hotels & Resorts, LLC and Dream Hotel Group LLC, regardless of their position or duties and regardless of whether they worked at the Dream Downtown.

The only FSLA claim that survived the Defendants' motion to dismiss Plaintiff's Second Amended Complaint is a claim by Plaintiff for alleged unpaid overtime compensation. As a room attendant, however, Plaintiff admits that her "regular" work schedule was from 8:30 to 16:30 five days a week and that she worked approximately 40 hours per week. Moreover, she provides only a single instance from her work history as a room attendant, establishing **not** that the Dream Downtown had a policy of denying its employees overtime compensation, but rather for that singular week her overtime compensation was allegedly wrongly calculated. By virtue of her promotion to floor manager, Plaintiff knew and understood that she would become an exempt employee and be paid a substantially higher fixed annual salary as opposed to the hourly compensation, including overtime, that she earned as a room attendant.

The Plaintiff predicates her certification motion upon her singular affidavit in which she recounts general and non-specific conversations she had with other floor managers and room attendants and does not indicate when and where these conversations occurred.  However, none of the conversations with room attendants makes any mention of the failure on the part of the Dream Downtown to pay room attendants overtime compensation to which they were allegedly

1

entitled. Rather, all of the conversations Plaintiff allegedly had with other room attendants focuses on complaints they allegedly had for having to work through their one-hour meal break so that they could finish their duties within their prescribed eight-hour shift and 40 hour workweek. Accordingly, Plaintiff's showing, based upon conclusory and unsupported assertions in her singular affidavit, is utterly lacking and the Court should deny certification of a collective of room attendants.

Plaintiff's showing is also utterly lacking to certify a collective of floor managers. Plaintiff has not provided any specific details about her alleged conversations with other floor managers including when and where these conversations occurred. In addition, Plaintiff's conversations with other floor managers do not set forth any detail concerning their pay, the hours that they worked and whether, in fact, any of them actually worked in excess of 40 hours per week. Indeed, because floor managers are not required to clock in or clock out, the only record of the time they actually worked is contained in the Exempt Managers Weekly Payroll Sheet and Housekeeping Schedule which scheduled Plaintiff no more than 40 hours per workweek. Accordingly, assuming, *arguendo,* Plaintiff was misclassified as an exempt employee, there is no documentary evidence that Plaintiff worked more than 40 hours during any workweek and there is no documentary evidence that Plaintiff ever informed any manager at the Dream Downtown that she allegedly was working in excess of 40 hours per workweek. Having little or no ability to establish that Plaintiff herself worked in excess of 40 hours per workweek as a floor manager, she has also not made any showing that there are other similarly situated floor managers who worked in excess of 40 hours per workweek

Finally, there is no basis to certify a collective of all non-managerial employees of the Defendants regardless of their duties or the position held and regardless of whether they worked

2

at the Dream Downtown.  Plaintiff has submitted no evidence of any alleged unlawful polices of
any Defendant concerning other non-managerial employees except, arguably, floor managers and
room attendants at the Dream Downtown.  Indeed, the only conversations that Plaintiff recounts
is with other room attendants and floor managers who worked exclusively at the Dream
Downtown.  Accordingly, there is no basis to certify a collective of all non-managerial
employees employed by the Defendants regardless of their duties or the position held and
regardless of whether they worked at the Dream Downtown.  Should the Court grant the
Plaintiff's motion, any collective should be limited to floor managers who worked at the Dream
Downtown.

## STATEMENT OF FACTS

In her Second Amended Complaint ("SAC") (attached to the Declaration of John D.
D'Ercole, Executed October 25, 2019 ("D'Ercole Declaration"), as Exhibit A), Plaintiff incudes
two claims under the FSLA.  In Count I (SAC, ¶¶ 125-129), Plaintiff asserts a claim on behalf of
herself and similarly situated collective action members for alleged failure to pay a federally
mandated minimum wage.  In Count III (SAC, ¶¶136-144), Plaintiff asserts a claim on behalf of
herself and similarly situated collective action members for failure to pay federally mandated
overtime compensation.  SAC, ¶139.  In its decision dated July 24, 2019 (the
"Decision")(attached to the D'Ercole Declaration as Exhibit B), the District Court dismissed
Count I of Plaintiff's Second Amended Complaint, limiting the only claim for consideration for
certification of a collective action under the FSLA to Plaintiff's overtime claim in Count III.[1]

---

[1] FSLA claims on behalf of a collective may only be brought under the substantive provisions of the FSLA and not
wage claims generally including those cognizable under New York's labor law. *See Salim Shahriar v. Smith &
Wollensky Rest. Group, Inc.*, 659 F.3d 234, 247 (2d Cir. 2011).

Plaintiff asserts in her affidavit that from May 16, 2011 to April 30, 2015 she worked as a room attendant exclusively at the Dream Downtown. *See* Affidavit of Chui-Fan Kwan In Support of Conditional Collective Certification, sworn to on June 12, 2018 ("Kwan Affidavit"),¶ 3 (attached as Exhibit 5 to the Declaration of John Troy, dated June 15, 2018).  As a room attendant, Plaintiff was required to clean guest rooms and she admits that her **<u>regular work</u> <u>schedule</u>** was from 8:30 to 16:30 with a one-hour long break for lunch five days a week, which amounts to 35 hours per week.  Kwan Affidavit, ¶¶4-5.  Indeed, Plaintiff admits further that as a room attendant she worked **<u>approximately forty (40) hours a week.</u>**  Kwan Affidavit, ¶5. Plaintiff primarily contends that for the time that she was employed as a room attendant she "frequently" was paid as if she took a one-hour lunch break when her time records indicate that her lunch breaks were as short as 16 minutes.  Kwan Affidavit, ¶ 6.  However, the Dream Downtown's Employee Handbook provides as its policy that "[a]ll full-time employees are provided with one unpaid meal period of 60 minutes in length each workday." *See* Declaration of Shiv Sohan, Executed October 25, 2019 ("Sohan Declaration"), Exhibit A.  In addition, the Dream Downtown's "Housekeeping Training Manual: Room Attendants" provides**: <u>"Meal</u> <u>breaks are 1 hour, ensure you are punching in and out for these and if staying on property</u> <u>ensure these are taken in the employee cafeteria."</u>** *See* Sohan Declaration, Exhibit B at 6. Plaintiff also asserts that she "frequently" would be required to work before and after her normal scheduled hours.  Kwan Affidavit, ¶ 6.  However, the Dream Downtown Employee Handbook provides as its formal policy that **<u>"[e]mployees are not permitted to clock in more than 7</u> <u>minutes prior to their scheduled shift or more than 7 minutes after the end of their</u> <u>scheduled shift unless permitted by their manager"</u>** and that any overtime work must be pre-approved by a manager. *See* Sohan Declaration, Exhibit A (P000013).

Plaintiff gives several allegedly "concrete" examples of the Dream Downtown's alleged unlawful policies. Kwan Affidavit, ¶ 8. However, only one of these examples relates to her contention that she failed to receive federally mandated overtime compensation as a room attendant. Plaintiff claims, **not that she was not paid overtime pursuant to an alleged illegal policy of the Dream Downtown**, but that she was not paid all of the overtime compensation to which was entitled. She alleges that for the pay period of June 10 to June 16, 2013, she was paid for 40 straight time hours and 3 overtime hours when, in actuality, her recorded time amounted to 40 straight time hours and 6.73 overtime hours. Kwan Affidavit, ¶¶ 9. This alleged "concrete" example actually undermines the Plaintiff's contention that the Dream Downtown had an illegal policy of not paying its room attendants overtime compensation. Indeed, the time and payroll records for Plaintiff reflect that there were other times where she received overtime compensation while working as a room attendant.

Plaintiff was promoted to a floor manager as of May 1, 2015 and held that position until August 6, 2016. When Plaintiff accepted the promotion of floor manager she received a substantial increase in salary and understood at the time of her promotion that floor managers were paid a fixed annual salary and were not entitled to receive overtime compensation because of their classification as exempt employees. *See* Sohan Declaration, Exhibit C. Plaintiff received an annual fixed salary of $45,000 per year from May 4, 2015 through June 30, 2016 and an annual fixed salary of $46,349.86 from July 1, 2016 to August 6, 2016. SAC, ¶¶104-105.

Plaintiff only sparsely describes her duties as a floor manager as requiring her to physically check 15 rooms cleaned by room attendants each workday as well as the halls, stairwells and supply closet on her assigned floor. Kwan Affidavit, ¶16. Plaintiff also claims that whenever there were not enough room attendants on duty to clean the 15 rooms, she was

required to perform room cleaning services. Kwan Affidavit, ¶22. Plaintiff does not provide any

indication of how often she allegedly was required to clean rooms as a floor manager. Plaintiff

claims as the basis of her overtime claim under the FSLA in her job as a floor manager that the

Defendants misclassified her and other floor managers as exempt managerial employees. Kwan

Affidavit, ¶¶25, 28. In this regard, Plaintiff asserts that pay stubs she received as a floor manager

were "fabricated" because they computed her annual fixed salary at an hourly rate based upon a

35 hour work week which she alleges bore no resemblance to the actual hours that she worked.

Kwan Affidavit, ¶ 26. Because of her exempt status as a salaried floor manager, Plaintiff was

not paid hourly compensation and was no longer required to clock in or out on the days that she

worked as a floor manager and the only record of her time worked as a floor manager is reflected

in Exempt Managers Weekly Payroll Sheet and Housekeeping Schedule. *See* Sohan Declaration,

Exhibit E and F. The Exempt Managers Weekly Payroll Sheet reflects that Plaintiff was

scheduled to work no more than eight hours during each shift that she worked, which included a

one-hour meal break. There is no evidence submitted by Plaintiff that she ever complained that

the earnings statements that she received and corresponding paycheck predicated upon the

Exempt Managers Weekly Payroll Sheet inaccurately reflected the hours that she worked or was

otherwise erroneous, which is required under the Dream Downtown Employee Handbook.

Plaintiff asserts as the essence of her argument that a collective should be certified that

she "know[s] that it is the Defendants' policy not to pay employees overtime compensation

because she has "talked with other employees at Dream Hotel Downtown, who has (sic) the

same or similar work schedule as me, and was told that they will also not paid for the total

amount of time that they have worked, nor compensated for all of their overtime hours worked."

Kwan Affidavit, ¶32.

As her primary evidence offered to demonstrate that Defendants had an unlawful policy of failing to pay overtime compensation to floor managers and room attendants and her defined collective of allegedly similarly situated employees, Plaintiff offers only conclusory and unsupported assertions, based solely upon alleged conversations she had with other room attendants and floor managers at the Dream Downtown and without identifying where and when any conversation occurred.

Plaintiff alleges that she had spoken to a regular floor manager named Sharon Enchill, who allegedly worked at the Dream Downtown from 2011 to the present. Kwan Affidavit, ¶34. Plaintiff states that Sharon complained about the unpaid one-hour meal break and "once" asked an unidentified "Director" why "we did not have an hour break to eat." The unidentified "Director" allegedly stated: "you are an adult, you can take care [of it]." Kwan Affidavit, ¶34. This statement does not command any floor manager not to take their one-hour meal break and certainly does not alter the formal policy of the Dream Downtown in its employee handbook stating expressly that full time employees are entitled to a one-hour uncompensated meal break.

Plaintiff states that she asked a similar question to an unidentified director who allegedly stated: "I worked in Dream [Hotel and,] and I never have a break." Kwan Affidavit, ¶34. This statement similarly did not command her not to take the one-hour meal break. Indeed, in a contradictory allegation, Plaintiff states that around May 2016 Sharon had to remind her Housman named Matthew to take a lunch break and complained that "no one ever cares if she took a lunch break of not." Kwan Affidavit, ¶35. Plaintiff asserts that "[i]f (sic) fact, not only is she [Sharon] not given a one hour 'break,' during which she had to work, but she is also never paid for the time she had to work in place of the 'break.'" Kwan Affidavit, ¶35.[2]

---

[2] Sharon was an exempt employee and, if she decided for whatever reason to work through all or part of her one-hour meal break, she would not be entitled as an exempt employee to any compensation other than her fixed annual

Even if a floor manager were required to work through his or her one-hour meal break, that would not necessarily indicate that the floor manager worked more than 40 hours per week since the normal schedule of a floor manager was five eight hour shifts totaling 40 hours including one hour allocated for a meal break.  Moreover, because floor managers received an annual fixed salary, they are getting paid whether they decide themselves, without any formal mandate, to work through all or part of their meal break on any given day.  Notably, because floor managers were not required to clock in or out, the Plaintiff has submitted no documentary evidence that she or any other floor manager actually worked more than 40 hours during any particular workweek.  It is respectfully submitted that without any such documentation, in the form of at least a diary or notes, it would be impossible for any floor manager to state on any given workday when they started work, when they stopped work and how long they took as a meal break.

Plaintiff asserts that she spoke to a regular floor manager named Yanette Urbaez who she states "like me, due to his 'manager' title is not compensated properly for his overtime hours." Kwan Affidavit, ¶36.  No specific detail is provided concerning the hours worked by Yanette and no evidence demonstrating that he worked more than 40 hours in any given workweek during the time that he was employed at the Dream Downtown.  While Plaintiff asserts, without any documentary proof, that she actually left work 30 minutes after her shift ended, she does not provide any evidence that any other floor manager had the same practice.  Kwan Affidavit, ¶ 12. In addition, Plaintiff's assertion is contradicted by Exempt Managers Weekly Payroll Sheet and Housekeeping Schedule.

---

salary which she received without deduction and not predicated on the actual hours that she worked. In addition, Plaintiff appears to be asserting a "gap time" claim under NYLL which is not cognizable as an FSLA Claim.

8

Plaintiff asserts that she spoke to a regular floor manager named Sagma Tsewang, who had been working at Dream Downtown since 2011. Kwan Affidavit, ¶37. Plaintiff asserts that Sagma would also not have a lunch break and, therefore, is not compensated for overtime hours she worked in excess of 40 in a workweek. Kwan Affidavit, ¶37. Plaintiff asserts that she is friends with Sagma and talked with her about her wages and work schedule and thus that is how she knows that Sagma was never compensated for alleged overtime work. Kwan Affidavit, ¶37.

Plaintiff asserts that she spoke to two non-regular section floor managers named Bozena Stesworski and Liliette Borges. Kwan Affidavit, ¶38. Plaintiff asserts that these floor managers "would often leave late because they have to wait for the room attendants to finish cleaning before they can check the room." Leaving "late" does not demonstrate that any other floor manager worked more than 40 hours per workweek. During any particular day, even if a floor manager left after some undefined period after their shift ended, their workweek would not necessarily exceed 40 hours if they took a meal break of a similar length in time. Of course, as stated above, it is impossible for any floor manager to prove on any given workday the exact amount of hours that they worked since floor managers were not required to clock in at the beginning of the day or clock out at the end of their day. Plaintiff also asserts that Bozena and Liliette "mentioned" they were not paid for the hours that they worked because they were not paid overtime compensation and did not get a lunch break. Kwan Affidavit, ¶¶38 and 39.

Plaintiff asserts that during the time that she worked as a room attendant, "unidentified "managing personnel" made it clear that room attendants had to finish their work at the end of their shift otherwise there was a chance that they would be placed on probation. Kwan Affidavit, ¶40. Consequently, allegedly "many room attendants would not take the full hour lunch break in order to finish all of their assigned work." Kwan Affidavit, ¶40. Plaintiff asserts in purely

conclusory fashion that room attendants would not be compensated for any additional work that they did during their lunch break. Kwan Affidavit, ¶40. Plaintiff provides no basis for making this assertion and, in fact, the only way this assertion could be made is through knowledge of the other person's actual hours worked and actual pay received for each week of their employment.

Plaintiff asserts that she spoke to a room attendant named Sue. Kwan Affidavit, ¶41. Plaintiff asserts that Sue would not take her full lunch break because there was too much work for her to finish before the end of the day. Kwan Affidavit, ¶42.

Plaintiff asserts that she spoke to a room attendant named Sandy. Kwan Affidavit, ¶42. Plaintiff asserts that Sandy did not have time to eat lunch because of the "policy to punch in and out on time for work" and so in order to finish on time she was allegedly forced "to use her lunch break." Kwan Affidavit, ¶42.

Plaintiff asserts that she spoke to a room attendant named Hellen Xiu Juan. Kwan Affidavit, ¶43. Plaintiff asserts that Hellen "would also not take her entire one-hour break, cutting it short in order to finish all of her work." Kwan Affidavit, ¶43.

Plaintiff asserts that she spoke to a room attendant named Hai Zheng Nong. Kwan Affidavit, ¶44. Plaintiff asserts that Hai "would also take a less than an hour break for lunch in order to finish the work assigned to her and avoid probation." Kwan Affidavit, ¶44.

Plaintiff asserts that she spoke to a room attendant named Sophia Pun. Kwan Affidavit, ¶45. Plaintiff asserts that Sophia "would also not take her full hour break because of her heavy workload in order to finish the work assigned to her and avoid probation." Kwan Affidavit, ¶45.

Plaintiff asserts that she spoke to a room attendant named Mariella Montero. Kwan Affidavit, ¶46. Plaintiff asserts that Mariella "is usually able to punch in and out of work

accurately, but in order to do so, only spend twenty (20) minutes on lunch and use the remainder of the time to do work." Kwan Affidavit, ¶46.

Plaintiff asserts that she spoke to a room attendant named Jan, who stopped working at the hotel at 2013. Kwan Affidavit, ¶47. Plaintiff asserts that she remembers Jan leaving because "there was too much work and the payment was too low." Kwan Affidavit, ¶47. Jan, according to Plaintiff, also never took the full hour for lunch when he worked there. Kwan Affidavit, ¶47.

Plaintiff asserts that she spoke to a room attendant named Angel. Kwan Affidavit, ¶48. Plaintiff asserts that Angel would also take less than a one-hour lunch break, and regardless of the actual duration the break, "the paycheck would always indicate that she spend (sic) an hour." Kwan Affidavit, ¶48.

None of the conversations with Sue, Sandy, Hellen, Hai, Sophia, Mariella, Jan and Angel demonstrate that they worked more than 40 hours in any given workweek or that they were denied overtime compensation for hours that they worked in excess of 40.

## ARGUMENT

## POINT I

### THE COURT SHOULD DENY PLAINTIFF'S MOTION TO CONDITIONALLY CERTIFY A COLLECTIVE BASED UPON CONCLUSORY AND UNSUPPORTED ASSERTIONS THAT THE DREAM DOWNTOWN HAD AN UNLAWFUL POLICY OF FAILING TO PAY OVERTIME COMPENSATION

The Second Circuit has endorsed a two-step process to assess whether it is appropriate to certify a collective action:

> The first step involves the court making an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred. . . . The court may send this notice after plaintiffs make a "modest factual showing" that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law'. . . . The 'modest factual showing' cannot be satisfied simply by

11

"unsupported assertions,' . . . but it should remain a low standard of proof
because the purpose of this first stage is merely to determine whether 'similarly
situated' plaintiffs do in fact exist, . . . district court will, on a fuller record,
determine whether a so-called 'collective action' may go forward by determining
whether the plaintiffs who have opted in are in fact 'similarly situated' to the
named plaintiffs.  The action may be 'de-certified' if the record reveals that they
are not, and the opt-in plaintiffs' claims may be dismissed without prejudice.
[Citations Omitted]

*Myers v. Hertz Corp.,* 624 F.3d 537, 555 (2d Cir. 2010).

"The statute does not define 'similarly situated, but Courts have found the operative test

to be 'whether there is a factual nexus between the claims of the named plaintiff[s] and those who

have chosen to opt-in to the action.'" *Zhenkai Sun v. Sushi Fussion Express Inc.,* 16 Civ. 4840,

2018 U.S. Dist. LEXIS 37515, at * 7 (S.D.N.Y. 2018).  Typically, a court looks to the pleadings

and any supporting affidavits to determine at the first stage whether the named plaintiff has made

the modest factual showing that he or she is similarly situated to any potential opt-in plaintiff

concerning the alleged unlawful practice. *Cheng Xia Wang v. Shun Lee Palace Restaurant, Inc.,*

17 Civ. 0840, 2018 U.S. Dist. LEXIS 108437, at *3 (S.D.N.Y. 2018); *Fernandez v. Sharp Mont.*

*Corp.,* 16 Civ. 0551, 2016 U.S. Dist. LEXIS 141916, at *2 (S.D.N.Y. 2016).

Although the standard of proof at the first step is low, it "cannot be satisfied simply by

unsupported assertions." *Cunningham v. Elec. Data Sys. Corp.,* 754 F. Supp. 2d 638, 644

(S.D.N.Y. 2010); *Myers v. Hertz Corp., supra,* 624 F.3d at 555; *see also Brown v. Barnes &*

*Noble, Inc.,* 252 F. Supp. 3d 255, 261 (S.D.N.Y. 2017).  "[A] plaintiff cannot simply state his

belief that others are similarly situated based on conversations with or observations of those

other potential opt-in members; rather, he must supply additional detail regarding the particular

conversations or observations substantiating that belief." *Fu v. Mee May Corp.,* 15 Civ. 4549,

2016 U.S. Dist. LEXIS 53199, at *3 (S.D.N.Y. 2016); *Sanchez v. JMP Ventures, L.L.C.,* 13 Civ.

7264, 2014 U.S. Dist. LEXIS 14980, at *10 (S.D.N.Y. 2014).

12

"Plaintiffs may satisfy their 'minimal' burden by relying on their own pleadings and affidavits, or the affidavits of other potential class members." *Diaz v. S & H Bondi's Dep't Store, Inc.*, 10 Civ. 7676, 2012 U.S. Dist. LEXIS 5683, at *3 (S.D.N.Y. 2012). However, where plaintiff's sole affidavit does not provide "any detail as to a single such observation or conversation," such as when or where the observations or conversations took place, that affidavit has been found insufficient to meet even the low evidentiary threshold required for conditional certification. *Mata v. Foodbridge LLC*, 14 Civ. 8754, 2015 U.S. Dist. LEXIS 70550, at *5 (E.D.N.Y. 2015); *see also Gomez v. Kitchenette 123 Inc.*, 16 Civ. 3302, 2017 U.S. Dist. LEXIS 155257, at *4 (S.D.N.Y. 2017)("[W]hen a plaintiff submits only one affidavit, without corroboration, the level of detail in that affidavit becomes particularly important in evaluating the sufficiency of the plaintiff's showing"). In addition, when there has been discovery with respect to conditional certification, courts have imposed a "modest plus" standard for determining whether plaintiffs have sufficiently demonstrated that they and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law. *See Korenblum v. Citigroup, Inc.*, 195 F.Supp.3d 475, 481-82 (S.D.N.Y. 2015)

Many courts have denied certification where a plaintiff fails to provide specific factual allegations beyond simply alleging that they observed or spoke with similarly situated employees who stated that they were allegedly denied overtime compensation. *See Cruz v. 70-30 Austin St. Bakery, Inc.,* 18 Civ. 7408, 2019 U.S. Dist. LEXIS 73666 (S.D.N.Y. 2019)(denying conditional certification based upon the singular five page affidavit of the plaintiff where nothing in plaintiff's "affidavit pertains to the hours or wages of the other individuals employed by [d]efendants" other than the vague assertion that other employees regularly worked in excess of 40 hours without overtime premium pay, which is insufficient to "demonstrat[e] a 'factual nexus'

between named [p]laintiff[] and the potential opt-in plaintiffs); *Ji v. Jling Inc.*, 15-CV-4194,

2016 U.S. Dist. LEXIS 66013, at *4-*5 (E.D.N.Y. 2016)(denying conditional certification based

on plaintiff's sole affidavit where plaintiff did not offer any specific evidence that other

employees of defendant actually worked more than 40 hours per week and were, therefore,

entitled to overtime premium pay); *Mata v. Foodbridge LLC, supra*, 2015 U.S. Dist. LEXIS

70550, at *3-*4 (denying conditional certification where plaintiff offered only his own affidavit

in which he claimed, based on unspecified "observations and conversations", that other

employees of defendant "were not paid their overtime wages . . . and were forced to sign

fraudulent documents"); *Sanchez v. JMP Ventures, L.L.C., supra*, 2014 U.S. Dist. LEXIS 14980,

at *2 (denying conditional certification based on plaintiff's sole affidavit in which he alleged a

"common practice" at all of defendant's restaurants based on his "observations and conversations

with other employees" who plaintiff identified only by their first names because such an affidavit

merely amounted to "a list of generalized allegations that have been molded into a declaration

which reads similarly to the complaint"); *Shanfa Li v. Chinatown Take-Out Inc.*, 16 Civ. 7787,

2018 U.S. Dist. LEXIS 28693, at *4-*5 (S.D.N.Y. 2018)(denying motion for conditional

certification based on plaintiff's claim that other employees were "underpaid" without describing

who these other employees were, what their base salary was or whether they worked enough to

qualify for overtime compensation); *Fu v. Mee May Corp., supra*, 2016 U.S. Dist. LEXIS 53199,

at *3 (denying motion for conditional certification based solely on plaintiffs' "conversations with

. . . coworkers and knowledge of their working hours and what they were paid" (internal

quotation marks omitted)); *Mata v. Foodbridge LLC, supra*, 2015 U.S. Dist. LEXIS 70550, at

*3-*4 (denying motion for conditional certification where plaintiff's only support for his claim

that other employees were not paid overtime was his "observations and conversations with other

employees" without any underlying details of those conversations); *Guo v. Tommy's Sushi Inc.*, 14 Civ. 3964, 2014 U.S. Dist. LEXIS 147981, at *3 (S.D.N.Y. 2015)(denying motion for conditional certification of a collective of all non-managerial employees based on "unsupported assertions" regarding discussions and comparisons among coworkers); *Ali v. New York City Health & Hosps. Corp.*, No. 11-CV-6393, 2013 U.S. Dist. LEXIS 44091 at *3 (S.D.N.Y. 2013)(denying conditional certification motion where plaintiff merely alleged that she "had conversations with other respiratory therapists about the fact that we worked in excess of forty hours a week"); *Morales v. Plantworks, Inc.*, No. 05-CV-2349, 2006 U.S. Dist. LEXIS 4267, 2006 WL 278154, at *3 (S.D.N.Y. 2006) (denying certification where there was no support for plaintiffs' claim of similarly situated other employees other than a "conclusory allegation . . . that '[t]here are over 20 current and former employees that are similarly situated to Plaintiffs . . . .").

**A.** **The Court Should Deny Certification Of A Collective Of Room Attendants Based Upon Plaintiff's Conclusory And Unsupported Assertions Of Plaintiff.**

The proof offered by Plaintiff established in fact that it was the Dream Downtown's policy to pay its employees overtime compensation. Plaintiff singular example of the Dream Downtown's alleged illegal policy demonstrates, **not that she was denied overtime compensation,** but that for a single week her overtime compensation may have been wrongly computed. [3] Indeed, Plaintiff admits that as a room attendant her regular work schedule was from 8:30 to 16:30 five days a week (40 hours) and, in actuality she worked approximately 40 hours per week. Kwan Affidavit, ¶5.

The Plaintiff also predicates her motion upon conversations that she had with other room attendants who worked exclusively at the Dream Downtown. On their face, the conversations

---

[3] In order to assert a claim for unpaid overtime under the FSLA, a plaintiff must establish that he or she worked compensable hours in excess of forty hours per week, was not properly compensated for this overtime and defendants knew or should have known that he or she was working overtime. 29 U.S.C. §207 (a)(1).

Plaintiff recounts with room attendants who worked at Dream Downtown are insufficient as a matter of law to certify a collective of room attendants based upon an alleged illegal policy of not paying them overtime compensation.  First, none of these other alleged room attendants whom she spoke with have submitted affidavits in support of a collective action.  As set forth above, when a plaintiff submits only one affidavit, without corroboration, the level of detail in that affidavit becomes particularly important in evaluating the sufficiency of the plaintiff's showing.  In such a case, it becomes critically important for the plaintiff to provide specific details concerning the substance of the conversations or observations including when and where they took place.  With respect to all of the conversations and/or observations with room attendants, Plaintiff only makes generalized and conclusory allegations and does not state when and where they took place.  More important, all of the conversations and/ observations center on complaints made by room attendants that their workload required them to work through all or part of their lunch break in order to finish within their prescribed eight (8) hour shift and 40 hour workweek, which does not demonstrate that any of these other room attendants worked in excess of 40 hours per week entitling them to overtime compensation.  None of the conversations and/or observations make any reference to any of them having to work more than 40 hours during any given workweek.  See *Ji, supra*, 2016 U.S. Dist. LEXIS 66013, at \*4-\*5.  Plaintiff's alleged conversations with other room attendants, at best, make only vague assertions that other room attendants are similarly situated because they were not paid overtime compensation.  No specific evidence has been offered by Plaintiff that any other room attendant actually worked more than 40 hours per week and Plaintiff has not demonstrated that she has actual knowledge of the hours that other room attendants worked and what they were paid.  Based upon this quantum of proof,

16

the courts in this circuit have roundly rejected conditional certification.  *See Cruz*; *Ji*; *Sanchez*; *Shanfa Li*; *Fu*; *Mata*; *Guo*; *Ali*; *Morales, supra.*

The Dream Downtown Employee Handbook (Sohan Declaration, Exhibit A) provides: that all full-time employees are entitled to a one-hour meal break (P000022); that employees are not permitted the clock in more than 7 minutes prior to their scheduled shift or more than 7 minutes after the end of their scheduled shift unless permitted by their Manager (P000013); that employees have the responsibility of accurately recording the time worked including the beginning and ending of each meal period (P000026); that any error in the amount of pay an employee received should promptly be brought to the attention of their manager (P000027); that non-exempt employees are entitled to overtime pay (P000027); and that overtime work must be approved before it is performed (P00026).  In addition, the Housekeeping Training Manual for room attendants reinforces the requirement of room attendants to take their one-hour meal break and clock in and out accurately.  Sohan Declaration, Exhibit B at 6. In fact, Plaintiff's own allegations bolster the Dream Downtown's policy of ensuring that their employees accurately clocked in and out for the periods that they worked and that employees took their one-hour meal break.  *See* Kwan Affidavit, ¶ 35 ("Another time around May, 2016, after SHARON ENCHILL had to remind her Housemen named Matthew to take a lunch break . . ."); ¶42 (" She would not have time to eat lunch because of the policy to punch in and out on time for work . . ."); ¶46 ("She is usually able to punch in and out of work accurately . . .").

The lawful policies implemented by the Dream Downtown concerning payment for overtime work set forth in its employee handbook, including its approval policy, make any claim by a room attendant or any other non-exempt employee individualized and cuts against certifying the action as a collective. *De Silva, supra*, 27 F. Supp. 3d at 322-323.  Moreover, where an

employer's policy is to compensate employees for all time worked including overtime work, a showing is required that the employer had an illegal practice not to follow its formal, written policy and a plaintiff seeking certification of a collective must establish that the illegal practices of which they complain are sufficiently uniform and pervasive as to warrant class treatment. *Id.* The Plaintiff has made no such showing. *See Brown, supra*, 2018 U.S. Dist. LEXIS at * 60 (denying certification, in part, where Café managers were scheduled to work 40 hours per week and plaintiff submitted little or no evidence that other Café Managers worked overtime).

Accordingly, there is no basis to certify a collective of room attendants since the Plaintiff has failed to make the modest factual showing required to establish the necessary factual nexus that other room attendants are similarly situated to her in that they suffered from an unlawful policy of the Defendants not to pay them overtime compensation.

### B.   The Court Should Deny Certification Of A Collective Of Floor Managers Based On Plaintiff's Conclusory and Unsupported Assertions.

The Plaintiff also has not made the appropriate showing to certify a collective of floor managers.  Plaintiff complains that as a floor manager she worked in excess of 40 hours per week but was not paid overtime compensation.  Plaintiff contends that floor managers were misclassified as exempt employees, but she has offered no proof other than stating that other floor managers at the Dream Downtown have a common FSLA exempt designation, which courts routinely find insufficient to certify a collective action. *See Ahmed v. T.J. Maxx Corp.*, 103 F.Supp.3d 343, 351 (S.D.N.Y. 2015); *Jenkins v. TJX Companies Inc.*, 853 F. Supp. 2d 317, 323 (E.D.N.Y. 2012); *Khan v. Airport Mgmt. Servs., LLC*, No. 10 CIV. 7735, 2011 U.S. Dist. LEXIS 133134, at *4 (S.D.N.Y. 2011).[4]  Plaintiff also asserts that her pay stubs that she received

---

[4]Under the executive exemption, employees are classified as "executives" if (1) they are "[c]ompensated on a salary basis"; (2) their "primary duty is management of the enterprise . . . or of a customarily recognized department or subdivision thereof"; (3) they "customarily and regularly direct[ ] the work of two or more other employees"; and (4) they "ha[ve] the authority to hire or fire other employees or" if their "suggestions and recommendations" on

18

as a floor manager were "fabricated" because they indicated that she worked 35 hours per week when, in actuality, she alleges that she worked more than 40 hours per week. However, any reference to hourly status on Plaintiff's pay stubs has no effect on the determination of whether she was a salaried, exempt employee. *Wright v. Aargo Sec. Servs.*, 2001 U.S. Dist. LEXIS 882 at \*21-22 (S.D.N.Y. 2001)(an employee may be salaried even though time records recorded the number of hours worked and listed an hourly rate of pay).

The claim by the Plaintiff that floor managers were misclassified as exempt is particularly lacking since she gladly accepted the promotion from room attendant to floor manager obviously for the substantially higher pay that she would receive in that position. Just as with her conversations with room attendants, Plaintiff provides only generalized statements concerning her conversations with floor managers and provides no specific details including when and where these conversations occurred.[5] These alleged conversations amount to nothing more than a generalized statement that floor managers, allegedly like her, were not paid overtime

---

personnel decisions "are given particular weight." 29 C.F.R. § 541.100(a)(1)—(4). An employee is compensated on a salary basis "if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of work performed." 29 C.F.R. §541.602 (a). Management generally includes, among other things, the training of employees, the directing of work of employees, appraising an employees productivity or efficiency and handling employee complaints or grievances. 29 C.F.R. §541.102. Under the administrative exemption, employees are classified as administrative if (1) they are "[c]ompensated on a salary basis"; (2) their "primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers"; and (3) their "primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a). Plaintiff was properly classified exempt based upon her duties as a floor manager. *See* Sohan Declaration, ¶¶9-10.

[5] In *Encino Motorcars, LLC v. Navarro*, ___ U.S. _____, 138 S.Ct. 1134, 200 L.Ed.2d 433 (2018), the Supreme Court rejected numerous past precedents of the lower courts holding that FSLA exemptions must be "narrowly construed". *Id.* at 1142. Instead, the Court, held that a "fair reading" of the FSLA exemption must be given by the courts applying it in wage and hour cases such as this one. Some courts in this District have certified collective or class actions in exemption cases relying, in part, upon the mandate that exemptions must be construed narrowly. *See e.g., Mason v. Lumber Liquidators, Inc.,* 17 Civ. 4780, 2019 U.S. Dist. LEXIS 80654 at \* 23 (E.D.N.Y. 2019); *Roseman*, 2017 U.S. Dist. LEXIS 156412 at \* 4; *Summa, supra,* 715 F.Supp.2d at 390. In light of the Supreme Court's rejection of the principle of narrow construction, the Court's analysis to certify a misclassification case should be more rigorous, and true to the requirement that a Plaintiff must make a modest factual showing demonstrating a factual nexus with similarly situated employees.

wages, a quantum of evidence that courts have determined is insufficient to certify a collective

under the FSLA. *Mata v. Foodbridge LLC, supra*, 2015 U.S. Dist. LEXIS 70550, at *3-*4.

Specifically, Plaintiff has not demonstrated that she has any knowledge of the paycheck details

for these other floor managers and any knowledge of length of hours that any of these floor

managers worked during any particular workweek of their work history.  Moreover, while

Plaintiff alleges, without any documentary proof, that it was her practice as floor manager early

and leave 30 minutes after her shift ended (Kwan Affidavit, ¶¶ 12, 26-27), she has not

demonstrated that other floor managers had a similar practice, which might entitle them to

overtime pay if they were determined to be non-exempt. *See Brown, supra*, 2018 U.S. Dist.

LEXIS at * 60.  As stated above, because floor managers were not required to clock in or out,

determining when a floor manager began work, when a floor manager stopped work and how

long the floor manager took for a meal break is an impossible task and, at best, requires

individualized proof.[6]  *See Chun Lun Guan v. Long Island Bus. Inst., Inc.*, 15 Civ. 2215, 2018

U.S. Dist. LEXIS 216363 at * 11 (S.D.N.Y 2018).

Moreover, Plaintiff in her affidavit also makes no mention of (a) the duties of other floor

managers whom she conversed with, (b) the level of managerial duties that they exercised and

(c) the proportion of non-managerial duties that they performed.  The Second Circuit has held

that "FSLA regulations are explicit that the determination of employee's exemption status must

be based on the specific employee's actual primary duties, not on his or her title or position.

*Gold v. N.Y. life Ins. Co.*, 730 F.3d 137, 145 (2d Cir. 2013); *Myers*, 624 F.3d at 549.  The

determination of whether an individual floor manager has properly been classified as an exempt

---

[6] An employer may require an employee to report having worked in order to receive pay for the time worked.
*Kuebel v. Black & Decker*, 643 F.3d 352, 355-357 (2d Cir. 2011).  Here, Plaintiff never informed the Dream
Downtown of the hours that she worked in excess of forty hours per week and has not provided any evidence in any
form that any of the putative members of the collective worked in excess of forty hours in any given workweek.

employee is an issue more appropriately determined on a case-by-case basis than by treating all of the floor managers as part of a single collective, especially given that criteria to determine whether an employee was properly classified is exempt is to analyze the amount of managerial duties they exercised and the proportion of non-exempt work they were required to perform. *See Dean v. Priceline.com Inc.*, 3:00 Civ. 1273, 2001 U.S. Dist. LEXIS 24982 (D. Conn. 2001). Plaintiff accepted a promotion to floor manager at a substantially increased salary knowing that she would become an exempt employee and no longer be entitled to receive overtime compensation. Whether the Plaintiff was properly classified as exempt will involve a detailed factual analysis of her job duties and responsibilities including her assertion that she had to perform the non-managerial work of cleaning rooms when there was a shortage of room attendants. This determination is individualized among floor managers and likely to vary. Accordingly, there is no basis to certify a collective of floor managers.

### C. **If The Court Conditionally Grants Certification, It Should Limit The Class To Floor Managers At The Dream Downtown.**

Plaintiff has presented **no** evidence of any alleged unlawful policy of the Defendants extending to any other non-managerial employee of the Dream Downtown or any person who worked at any hotel other than at the Dream Downtown. Courts have limited a collective action to the categories of employees that a plaintiff had submitted proof of similarity and the location where the Plaintiff was actually employed when a plaintiff did not converse with or observe employees at other locations and there was no evidence was submitted concerning a defendant's policies at other locations. *See Lijun Geng v. Shu Han Ju Rest. II Corp.,* 18 Civ. 12220, 2019 U.S. Dist. LEXIS 154246 at * 37 (S.D.N.Y. 2019)("To justify conditional certification of a collective that includes additional employees, Plaintiffs are required to make a 'modest but job-specific factual showing'" including information concerning these other employees wages, hours

21

and duties)*; see also Tanski v. Avalonbay Communities, Inc.*, No. CV 15-6260, 2017 U.S. Dist. LEXIS 112506, at *14 (E.D.N.Y. 2017); *Anjum v. J.C. Penney Co.*, No. 13 CV 460, 2015 U.S. Dist. LEXIS 73820, at *8 (E.D.N.Y. 2015); *Sharma v. Burberry Ltd.*, 52 F. Supp. 3d 443, 459 (E.D.N.Y. 2014); *Fa Ting Wang v. Empire State Auto Corp.*, 14 Civ. 1491, 2015 U.S. Dist. LEXIS 99417 at * 20-29 (E.D.N.Y. 2015).

All of the conversations that Plaintiff recounts are with other room attendants and floor managers who worked **exclusively** at the Dream Downtown.  None of the Plaintiff's conversations with room attendants focused upon their failure to receive overtime compensation but rather upon allegedly that they were required to work during some part of their lunch break in order to finish their 8 hour shift on time.  Accordingly, in the event that the Court grants conditional certification of a collective, the Court should limit the scope of the collective to current and former floor managers at the Dream Downtown.[7]

## POINT II

## PLAINTIFF'S NOTICE TO POTENTIAL OPT-IN PLAINTIFFS SHOULD BE REVISED

The Plaintiff has proposed a notice which is deficient in several material ways.  If the Court certifies a collective, it should provide the alternative notices attached to the D'Ercole Declaration as Exhibits C and D.

---

[7] This Court in its Decision dismissed the action against Defendants Sahara Hampshire Hotel Management LLC and Sahara Hampshire Hotel Management Co. II, Inc., which were alleged in the SAC to be doing business as the Dream Hotel Midtown.  SAC, ¶¶19-26; Decision at 23.  No specific allegations are made with respect to any hotel other than the Dream Downtown in the SAC or in Plaintiff's affidavit in support of certification.  Consistent with the above authorities, it would be inappropriate to include any employees from any hotel other than employees from the Dream Downtown into the collective since absolutely no evidence has been submitted by Plaintiff, either documentary or based upon conversations and observations of other hotel employees, concerning the policies and compensation practices of any hotel other than the Dream Downtown.  As set forth in the accompanying Declaration of Rabinder Pal Singh, Executed October 25, 2019, the hotels are separately managed on a day-to-day basis and have different policies and procedures unique to their hotel location and marketing profile.

A.    __The Proposed Notice Should Be Given Only In English.__

The Plaintiff proposes that the proposed notice be given in three different languages,
English, Chinese and Spanish.  At the time that Plaintiff became employed by the Dream
Downtown she was given a "Notice and Acknowledgment of Pay Rate and Payday under section
195.1 of the New York State Labor Law Notice for Hourly Rate Employees."  *See* Sohan
Declaration, Exhibit G.  Plaintiff checked the box affirming: "I have been given this pay notice
in English because it is my primary language."  In addition, in her application for employment,
Plaintiff stated that her primary skills and qualifications were: "Good communication with
customer," clearly demonstrating that she is fluent in English.  *See* Sohan Declaration, Exhibit H.
Nowhere in her affidavit does she state that any of the persons with whom she had conversations
had a primary language other than English. The Court should reject Plaintiff's request.

B.    __The Proposed Notice Should Only Be Given For A Three Year Period__
__Preceding The Date The Court Conditionally Certifies The Collective.__

In FLSA collective actions, the statute of limitations is not tolled for opt-in plaintiffs until
the date on which their written consent is filed in the court in which the action was commenced.
29 U.S.C. § 256(b).  Accordingly, some courts have ordered notice to the collective for the three-
year period prior to the date of the order certifying the collective or to the mailing of the notice.
*See, e.g., Knox v. John Varvatos Enters.,* 282 F.Supp.3d 644, 661-662 (S.D.N.Y. 2017); *In re
Penthouse Exec. Club*, 2010 U.S. Dist. LEXIS 114743, at *5 n.4 (S.D.N.Y. 2010); *Gjurovich v.
Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101, 106 (S.D.N.Y. 2003).  Accordingly, the
Court should require the notice be sent only to persons employed by the Dream Downtown as
floor managers during the three-year period preceding the date of the order certifying the
collective.

C.   **The Opt-In Period Should Be For A Period Of 60 days.**

Plaintiff proposes a ninety (90) day opt-in period based upon her contention that it will allow the greatest number of plaintiffs to opt -in the action.  However, the common practice in Courts in this District is to set a sixty (60) day opt-in period.  *Genxiang v. Hiro Sushi at Ollie's, Inc.*, 17 Civ. 7066 (DF), 2019 U.S. Dist. LEXIS 22745 at *36-37 (S.D.N.Y. 2019).  The Plaintiff also proposes that the Court equitably toll the statute of limitations for ninety (90) days until the expiration of the opt-in period.  Equitable tolling has only been allowed in rare and exceptional circumstances and is not warranted in this case.  *Id.* at * 38.  The Plaintiff's First Amended Complaint was dismissed for its deficient pleading and her Second Amended Complaint was filed on January 28, 2019, approximately nine months ago.  The motion for conditional certification was only recently renewed and there is no basis for equitable tolling.

D.   **The Proposed Notice Should Not Make References To Plaintiff's NYLL Claims.**

Courts have found it appropriate to remove from any proposed notice under the FSLA any reference to NYLL claims due to a tendency to confuse potential plaintiffs.  *See Ornrat Keawsri v. Ramen-Ya Inc.*, 17 Civ. 2406 (VEC), 2018 U.S. Dist. LEXIS 936 at * 19-20 (S.D.N.Y. 2018).  Accordingly, the proposed notice should not make any mention of Plaintiff's NYLL claims.

E.   **The Proposed Notice Should Be Disseminated Only By Mail And Email And Contact Information Should Be Limited.**

The Plaintiff proposes that notice be disseminated via mail, email, text message, social media and individual chat and by posting the proposed notice at the hotel worksite.  It is sufficient in this case for notice to be disseminated by first class mail and email and by no other means including the posting of the notice at the hotel location.  *See Islam v. LX Ave. Bagels, Inc.*, 18 Civ. 04895, 2019 U.S. Dist. LEXIS 173744 at * 29 (S.D.N.Y. 2019)(recognizing that mail and email notice to be adequate means of distribution and the potential disruption that can occur

24

when the employer is required to post the notice in the workplace announcing that one or more employees have accuse it of violating the law); *Michael v. Bloomberg, L.P.*, Index No. 14 Civ. 2657, 2015 U.S. Dist. LEXIS 51030 at * 11 (S.D.N.Y. 2015)(allowing posting only where a significant number of initial mailings were returned as undeliverable); *Delijanin, supra*, 2019 U.S. Dist. Lexis 67948 at *28.  In addition, contact information for potential opt-in plaintiffs should omit personal information such as telephone numbers, date of birth and social security numbers absent a showing that a large number of initial mailings were returned as undeliverable. Further, contact information should be limited to names, dates of employment, last known addresses, and email addresses for all potential plaintiffs within three years preceding the notice issuance date.  *Michael, supra*, 2015 U.S. Dist. LEXIS 51030 at * 11.  Given that the notice provisions contained herein are sufficient to provide notice to putative opt-in plaintiffs a dedicated website is unnecessary.  *See Mason, supra,* 2019 U.S. Dist. LEXIS 80654 at * 47.

## CONCLUSION

For all of the foregoing reasons, the Court should deny the Plaintiff's motion for conditional certification of a collective action pursuant to 29 U.S.C. § 216 (b).

Dated: New York, New York
          October 25, 2019

Respectfully submitted,

ROBINSON BROG LEINWAND GREENE
GENOVESE & GLUCK P.C.

By: _____
     John D'Ercole, Esq.
     Lisa Jones, Esq.
     875 Third Avenue, 9th Floor
     New York, NY  10022
     T:  (212) 603-6300
     F:  (212) 956-2164

{01027081.DOCX;7 }